Defendant-appellant Karl Kelly ("defendant") was indicted for aggravated robbery in violation of R.C. 2911.01 and kidnapping in violation of R.C. 2905.01. After a bench trial, defendant was convicted of aggravated robbery and acquitted of kidnapping. On appeal, defendant argues the trial court erred in denying his Crim.R. 29 motion for acquittal.
The record indicates defendant pleaded not guilty at his arraignment hearing and the case proceeded to trial. At trial, plaintiff-appellee State of Ohio presented its first witness, Betty Kacklaudis, who testified she was working as a receptionist at the Puritas Road Animal Hospital on July 7, 1997. She stated it was approximately 6:00 p.m. and the hospital was closed for business when she noticed a man enter. Kacklaudis said she had recently read an article in the newspaper about a man who was robbing area veterinarians. She stated the man who entered the hospital fit the physical description of the robber provided in the newspaper. She also said she saw what looked like the handle of a gun sticking out from underneath his T-shirt. Kacklaudis, who was on the phone at the time, put the phone down and went into the back to speak with Dr. Sikora. She said she told Sikora the man who just came in fit the description in the newspaper and she was sure he possessed a gun. Kacklaudis testified Sikora told her to go back to her desk and call 911. Next, Kacklaudis stated she saw Sikora approach the man and a discussion ensued between the man and Sikora about the drug Ketamine. She said Sikora and the man went into the back of the hospital. She testified she then called 911 and when she looked back towards the front doors she noticed Sikora had run out the front doors and was looking up and down the street.
The second witness to testify was Dr. George Sikora. He said he is a veterinarian and the owner of the Puritas Avenue Animal Hospital. Sikora testified it was July 7, 1997, at about 6:00 p.m. when Kacklaudis came into the back and told him there maybe a problem. Sikora related how Kacklaudis told him about the newspaper article and the man fitting the description and how she believed the man had a gun in his belt. He stated he informed Kacklaudis to call 911 and he went out to the waiting room and approached the man. Sikora said the man began a story about his dog being ill but then blurted out "[l]et me tell you what this is really about." Sikora said the man reached into his pants and pulled out a revolver and proceeded to say "I want all the Ketacet in the hospital." Sikora testified the man then jumped over the counter and followed him into the back. He said when they reached the back, the man put the gun back in his pants. Sikora stated he then gave the man one and a half bottles of Ketacet and the man placed the drugs into a plastic bag and exited the hospital.
Both Kacklaudis and Sikora identified the defendant in court as the man who entered the hospital and stole the drugs on the day in question.
Three alibi witnesses presented their testimony on behalf of defendant. Laura Marotta testified she lives with defendant and is his girlfriend. She stated she is a cook at Wings Food and Spirits, a bar, and defendant usually comes in every night to see if she needs a ride home. On July 7, 1997, she said she was working the 10:00 a.m. to 6:00 p.m. shift. Marotta testified defendant entered the bar "a little after 5:00" but was unsure how long he remained. Tina Cieker testified she was working at Wings Food and Spirits on the day in question as a bartender. She said she saw defendant enter the bar "shortly after 5:00." The next witness was Shannon Martin, who testified defendant "was a boyfriend of a good friend of mine * * * Laura Marotta." Martin said she arrived at Wings Food and Spirits on July 7, 1997, for the evening shift at about 5:30 and noticed defendant was "sitting at the corner of the bar underneath the TV by the front door."
Lastly, defendant testified on his own behalf. He admitted to a previous felony conviction for burglary. As to July 7, 1997. defendant stated he went straight from work to the bar and arrived there "probably twenty after 5:00." He said this is his normal routine because he stops in the bar to let Marotta know "I was done with work and just to discuss with her what we were going to do for the evening." He said he was there for an hour and a half and left around 7:30 or 7:45. Defendant concluded his testimony by saying he was not in the vicinity of the Puritas Avenue Animal Hospital on July 7, 1997, and he does not own a gun.
After hearing all the evidence, the trial court found defendant guilty of aggravated robbery including two specifications, one for possessing a firearm and the other for brandishing the firearm. The trial court then acquitted defendant of the second charge, kidnapping. Defendant timely filed his notice and now presents a single assignment of error.
In his single assignment of error defendant states as follows:
 THE LOWER COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CIVIL [sic] PROCEDURE.
Defendant argues the state, in trying to prove a gun specification, must present evidence the gun was operable. And in the case sub judice, the state did not present evidence that the gun was operable. Defendant claims Jean Kacklaudis did not see the gun or see him brandish the gun, only Dr. Sikora saw the gun and he said he was not threatened by the gun. Defendant maintains there is no evidence he threatened to kill anyone or he even pointed the gun at Sikora. In support, defendant relates the fact that he told Sikora he was not in danger and he was not going to be harmed. Thus, there was no implicit threat and he was incorrectly sentenced regarding the gun specification.
Pursuant to Crim.R. 29 (A), the trial court is authorized to enter a judgment of acquittal if the evidence presented is insufficient to sustain a conviction on the offense charged. However, a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether a material element of the crime has been proven beyond a reasonable doubt. State v.Bridgeman (1978), 55 Ohio St.2d 261. syllabus. Furthermore, in reviewing a ruling on a motion for judgment of acquittal, a reviewing court must construe the evidence in a light most favorable to the prosecution. State v. Wolfe (1988), 51 Ohio App.3d 215,216.
R.C. 2911.01 aggravated robbery is defined as follows:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
R.C. 2923.11 (B) (1) defines a firearm as a deadly weapon that is capable "of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." The code section then describes how a trier of fact determines whether a firearm is capable of firing by stating:
 (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.
The Ohio Supreme Court recently discussed this issue with strikingly similar facts in State v.Thompkins (1997), 78 Ohio St.3d 380. Thompkins entered a bakery and asked a clerk for an employment application. When the clerk turned back towards Thompkins, after reaching for the application, she noticed Thompkins was brandishing a gun. Thompkins pointed the gun at the clerk and informed her he was committing a "holdup" and be "quick, quick." The clerk gave Thompkins $800 from the cash register and he left the store. He was later identified by the clerk through a photographic array and subsequently apprehended. Thompkins was found guilty by a jury of aggravated robbery and a firearm specification. The Court of Appeals reversed Thompkins' conviction finding there was insufficient evidence in the record to prove operability of the firearm. However, the Ohio Supreme Court reversed the Court of Appeals holding, at syllabus:
 1. A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. (State v. Murphy [1990]. 49 Ohio St.3d 206., 551 N.E.2d 932. State v. Jenks [1991], 61 Ohio St.3d 259, 574 N.E.2d 492. and State v. Dixon [1995], 71 Ohio St.3d 608, 646 N.E.2d 453, followed; R.C. 2923.11[B] [1] and [2], construed and applied.)
The Court noted no express threats were made on the clerk's life but "the fact that Thompkins did not explicitly threaten Brinkman does not take away from the fact that Brinkman thought her life was in danger. Even absent any explicit verbal threats on the part of Thompkins, the trier of fact in this case could have reasonably concluded, based on the totality of the circumstances, that Thompkins was in possession of a firearm at the time of the offense, that is, a deadly weapon capable of expelling projectiles by an explosive or combustible propellant." Id. at 383. Furthermore, the Court discussed the relevance of implicit versus explicit threats and held "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. Following State v. Dixon
(1995), 71 Ohio St.3d 608.
In the present case, an implicit threat was made to Dr. Sikora. Sikora testified defendant removed a silver-plated revolver from his pants and told him "* * * as long as [you] cooperate, no one will get hurt." The impact of this statement on Sikora as a threat is evident in light of Sikora's subsequent statements when he says "* * * he went out the front parking lot and I let him get a good distance from me, because I didn't want to * * * have him see me follow him and turn around and shoot me ***" and "I was nervous at the time. He could have blown my brainsout." (Emphasis added). Based on these facts, it is clear defendant brandished the gun in front of Sikora and made an implicit threat that if Sikora did not comply and hand over the drugs he would be harmed. Construing the evidence in a light most favorable to the prosecution and following Thompkins, we hold the evidence was sufficient to find defendant guilty of the firearm specification. Accordingly, defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J.
 PATRICIA A. BLACKMON, J., CONCUR.
 ________________________ JOHN T. PATTON PRESIDING JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1)